Gary DOWER, Plaintiff,

v.

Ralph R. DICKINSON, Donald G. Sager, and the Town of Watertown, Defendants.

No. 88–CV–895.

United States District Court, N.D. New York.

Dec. 15, 1988.

---

Lombardi Devorsetz Stinziano & Smith, Syracuse, N.Y., for plaintiff; Sidney Devorsetz, of counsel.

O'Hara & Crough, Syracuse, N.Y., for defendants Dickinson & Town of Watertown; Susan T. Johns, of counsel.

Dewey Balantine Bushby Palmer & Wood, New York City, for defendant Sager; Sanford M. Litvack, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

Defendants Dickinson and the Town of Watertown move to dismiss the federal causes of action alleged in plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. Further, these defendants move to dismiss the pendent State claims, under Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. The motions to dismiss are granted.

### I. Background

This action arises out of an allegedly defamatory letter dated July 24, 1988, ("the July 24 letter") which was written by Mr. Ralph R. Dickinson to a Mr. Donald G. Sager. Mr. Dickinson is the elected Supervisor of the Town of Watertown, New York. Mr. Sager is a resident of Cheektowaga, New York, who is active in opposing a Mall which is currently in the process of being constructed in that area by the Pyramid Company. The Town of Watertown ("Town") is a municipal corporation within the State of New York who at all times relevant to this action has employed defendant Dickinson as Supervisor. The plaintiff, Mr. Gary Dower, is a citizen of the State of New York who resides in the County of Onondaga; he is and has been a general partner of the Pyramid Company of Watertown.

The July 24 letter concerns itself with the actions of plaintiff Dower when going about the business of obtaining approval for and then constructing the "Salmon Run Mall" in the Town of Watertown. The July 24 letter, attached to plaintiff's complaint and incorporated by reference, is written on the letterhead of the Office of the Supervisor of the Town of Watertown. The letter contains many allegations against plaintiff Dower which the plaintiff claims are false and libelous. Among other things, the letter asserts that the plaintiff attempted to pay, or have defendants Dickinson and the Town pay, a bribe to the City of Watertown in connection with the development of the Salmon Run Mall and

that plaintiff repeatedly tried to "con" a public official (namely defendant Dickinson) and "buy influence."

Plaintiff's first cause of action, brought under 42 U.S.C. § 1983, alleges that the letter was published with the intent to disparage and interfere with the conduct of plaintiff's business and his business reputation, and has actually caused or will cause such damage. This, it is alleged, has deprived plaintiff of his rights without due process of law in violation of the Fourteenth Amendment. The second cause of action, which seeks damages pursuant to 42 U.S.C. §§ 1985(3) and 1986, alleges a conspiracy among the three defendants to defame plaintiff and thereby disparage his business reputation and interfere with the conduct of his business. This conspiracy has allegedly deprived plaintiff of his liberty and property without due process of law. The third and fourth causes of action appear to be pendent state claims for the common law torts of defamation and/or interference with business opportunity.

The complaint requests (i) a permanent injunction restraining the defendants and all persons acting under their authority from further disseminating the July 24 letter or the false, malicious and libelous statements set forth therein; (ii) compensatory damages in an amount to be determined at trial; (iii) punitive damages; (iv) attorneys' fees pursuant to 42 U.S.C. § 1988.

Defendants Dickinson and the Town of Watertown ("the defendants") have brought this motion to dismiss the complaint in its entirety. Defendant Sager is represented by separate counsel and has not joined in this motion. The movants argue that plaintiff's federal causes of action fail to state a claim upon which relief can be granted and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), and that the pendent state claims should be dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). In the alternative, the defendants request that the third and fourth causes of action be dismissed for failure to serve a "Notice of Claim" upon the Town as is required by New York

General Municipal Law § 50-e. Defendants further move for an award of costs including attorneys fees, pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. 11.

## II. Motion to Dismiss

 In deciding this motion to dismiss the court must construe the complaint in the light most favorable to the plaintiff and must accept as true the factual allegations of the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Moreover, in a Rule 12(b)(6) motion, a pleading is deemed to include any document attached to it as an exhibit or incorporated into it by reference. *Goldman v. Belden,* 754 F.2d 1059, 1065 (2nd Cir.1985). Thus the subject July 24 letter, attached to the complaint and incorporated into it by reference, is a part of the complaint for purposes of deciding this motion.

There being no diversity of citizenship between the parties to this action, the jurisdiction of this court is premised upon the federal questions raised in the first and second causes of action in the complaint. The court will consider these claims first, there being no jurisdiction to adjudge the merits of the state pendent claims should this court find that there is no federal question properly before it.

Taken as true, the federal causes of action assert that specific libelous statements were made in the July 24 letter written by the Town of Watertown Supervisor, Ralph Dickinson. Moreover, defendant Dickinson, as a municipal official, was acting under color of state law. These defamatory statements have had the purpose and effect of damaging plaintiff Dower's reputation, interfering with the conduct of his business, and impeding or threatening to impede him from securing advantageous business opportunities. By these actions, along with the defendants' "conspiracy" to engage in these actions, the plaintiff has allegedly been deprived of his Fourteenth Amendment right against the deprivation of liberty or property without due process of law.

According to the complaint, plaintiff Dower is a partner in the Pyramid Compa-

ny of Watertown. He has been involved in the development and operation of an "enclosed regional shopping mall" called the Salmon Run Mall. The mall is located in the Town of Watertown, New York. At the request of defendant Sager, defendant Dickinson wrote a letter dated July 24, 1988, to Sager. It appears that Defendant Sager is active in opposing a "Pyramid" mall which is under construction in the Buffalo area of western New York.

The letter contained numerous false and malicious statements to the effect that Mr. Dower attempted to bribe, or have the Town of Watertown bribe, the City of Watertown into extending certain municipal services to the Salmon Run Mall. Additionally, the letter intentionally and falsely accused Mr. Dower of attempting to buy influence and "con" Town of Watertown officials. The language of the July 24 letter expressly invited defendant Sager to "feel free to do as you wish with the information and inclosures [sic] in this letter." The court assumes for the purpose of this motion that defendant Sager distributed the letter. The court also assumes that these actions took place "under color of law."

### III. Discussion

The first cause of action states that defendants' conduct "deprived plaintiff of rights secured to him under the Constitution of the United States, including the Fourteenth Amendment, the laws of the United States, including specifically, 42 U.S.C. § 1983." The second cause of action alleges that the actions complained of were orchestrated by way of a conspiracy among the defendants. This cause of action claims that "defendants have denied plaintiff rights granted him under the Constitution and laws of the United States, including but not limited to, 42 U.S.C. §§ 1985(3), 1986."

When addressing the federal issues raised by the defendant's motion to dismiss, the legal memorandum of both plaintiff and defendants Dickinson and the Town of Watertown direct their arguments to whether there has been a deprivation of "liberty" or "property" without due pro-

cess of law. Neither party has brought to the court's attention any federal statute which has allegedly been violated by the actions which underlie the complaint. Therefore, this court, when determining whether the plaintiff has a cognizable claim under 42 U.S.C. §§ 1983, 1985(3), and 1986, will limit its review of federal law to plaintiff's Fourteenth Amendment claim, and will focus upon the allegation that the defendants deprived plaintiff of liberty or property without due process of law.

### A. The Section 1983 Claim

For a plaintiff to establish a claim cognizable under section 1983 he must show that defendants deprived him of a right secured by the Constitution and laws of the United States, and that any such deprivation was achieved under color of law. *Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

The case of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), is central to a proper analysis of this motion. In *Paul* the Supreme Court addressed the issue of whether a citizen's charge of defamation, "standing alone and apart from any other governmental action with respect to him, stated a claim for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment." *Id.* at 694, 96 S.Ct. at 1157. That action arose from the inclusion of plaintiff Davis's name and photograph in a flyer of "active shoplifters" which two police chiefs had distributed to approximately eight hundred merchants in the State of Kentucky. Although Davis had been arrested for shoplifting, the charges against him were dropped a few months after the flyer had been circulated. *Id.* at 694–98, 96 S.Ct. at 1157–59. In his complaint Davis asserted that the appearance of his name and picture on the police flyer would impair his future employment opportunities and impede his ability to enter and shop in local businesses. Though reprimanded by his employer, Davis did not lose his job. *Id.* at 696, 96 S.Ct. at 1158. With these facts before it the Supreme Court held that Davis's defamation, standing alone, was not actionable under section 1983 even

though that defamation occurred under color of law. *Id.* at 712, 96 S.Ct. at 1166.

■ In arriving at its conclusion the Supreme Court first took issue with the view that the Due Process Clause is violated whenever a state action could be characterized as tortious.

> [Plaintiff] apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.... [T]he Due Process Clause cannot be the source for such law. *Id.* at 700–01, 96 S.Ct. at 1160.

The Court then found that *"reputation alone, apart from some more tangible interests such as employment,* is ... [not] 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161 (emphasis added).

The Court held, however, that should reputation be protected by state *statutory law* it would then constitute a liberty or property interest whose deprivation without due process of law would constitute a cognizable claim under section 1983. In so holding the court differentiated between the common law of torts which may protect an interest, and a positive grant or entitlement by state statute. *Id.* at 711–12, 96 S.Ct. at 1165. The Court in making this common law/statutory law distinction went about the job of recharacterizing a number of its previous decisions,[1] and distinguishing them from the facts of the *Paul* case. The Supreme Court then concluded that:

> In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law

was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the state, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions. *Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws.* For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" or "property" guaranteed against state deprivation without due process of law. *Id.* at 711–12, 96 S.Ct. at 1165–66 (emphasis added).

The Court did not say whether the Kentucky common law of torts protected Davis from defamation but it seems to have been the case. The Court noted that "respondents complaint would appear to state a classical claim for defamation actionable in the courts of virtually every State. Imputing criminal behavior to an individual is generally considered defamatory *per se,*

---

1. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (the case involved injury to reputation in addition to the denial of the right to attend school); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (injury to reputation plus a refusal to rehire); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (injury to reputation plus loss of the right to purchase liquor); and *U.S. v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (injury to reputation plus prohibition from future government employment). *See Marrero v. City of Hialeah,* 625 F.2d 499, 513 and n. 17 (5th Cir.1980).

and actionable without proof of special damages." *Id.* at 697, 96 S.Ct. at 1159.

The statutory law/common law of tort distinction, however, does not mean that an available remedy under the State's common law of torts will somehow bar a proper constitutional claim. As stated in *Monroe v. Pape*, "[i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

### The Present Case

As a preliminary matter, the court notes that this case does not present an instance where employment with a government or a private organization has been affected, nor does it involve the demotion of an employee as a result of a public official's defamation. Moreover, this case does not present a situation in which a person has had a contract with the government terminated or future opportunities to contract with the government barred. And, the court is careful to note that we do not address defamation as an *element* of damages of a section 1983 claim when defamation by a public official occurs in the course of the perpetration of a clear constitutional tort such as an arrest or search and seizure without probable cause.

### The Standard

■ *Paul* provides this court with a legal framework which may be summarized in this manner: When an individual is defamed by a public official it will constitute a deprivation of "liberty" or "property" without due process of law, actionable under section 1983, if a State *statute* protects that individual against such defamation. In the alternative, an individual, whose reputation is injured by the remarks of a public official *and additionally* suffers a resultant *'tangible' injury such as loss of employment as a result of the defamation,* is also deprived of a liberty or property interest protected by the due process clause. *Paul v. Davis,* 424 U.S. 693, 699–710, 96 S.Ct. 1155, 1159–64, 47 L.Ed.2d

405; *see Zemsky v. City of New York,* 821 F.2d 148, 151 (2nd Cir.1987).

### Statutory Liberty or Property

The plaintiff has not cited any state statute which protects him against the defamation which, for purposes of this motion, the court must assume occurred in this case. Moreover, the plaintiff has not cited any state statute which operates to bar the interference with business opportunity complained of in this action. As stated in the plaintiff's Memorandum of Law at page six:

> The complaint sets forth four causes of action: two under federal law and two under common law tort theories. The federal causes of action assert that the specific libelous statements in issue were made by a municipal official under color of state law, and had the purpose and effect of damaging plaintiff's reputation, interfering with the conduct of his business, and impeding or threatening to impede him from securing advantageous business opportunities (thereby depriving him of cognizable rights without due process of law, in violation of 42 U.S.C. § 1983 *et seq.*). *See* Complaint [pars.] 13, 15. The third and fourth causes of action are premised on the same basic factual allegations as the federal claims, and predicate liability under common law principles.

It is clear that the plaintiff does not base any part of his claims upon New York statute. Rather, to the extent that plaintiff's interests in his reputation and business opportunity is protected by New York law, it is the State's common law of torts which affords that protection.

### The "Stigma Plus" Test

■ This being the case the court must next proceed to determine whether the defendants' defamation of plaintiff, along with the resultant interference with his business opportunity, constitutes a property or liberty interest protected by the due process clause. The analysis that must be undertaken has been termed the "stigma plus" test. It arises from the *Paul* Court's requirement that defamation by a public

official must be coupled with some sort of "tangible" injury, such as loss of employment as a result of the defamation, to become a liberty or property interest protected by the Fourteenth Amendment and, thus, section 1983. *Paul v. Davis*, 424 U.S. at 701, 96 S.Ct. at 1161; *Zemsky v. City of New York*, 821 F.2d at 151.

The narrow issue now before this court is whether interference with business opportunity is a "tangible" injury. By tangible injury the court means an injury which, if caused by, or incurred in concert with the defamatory remarks of a public official, is sufficient to constitute a liberty or property interest protected by the due process clause. This same issue has been addressed by a number of circuit courts; they are split as to the answer.

*The Liberal View of "Tangible"*

In *Little v. City of North Miami*, 805 F.2d 962 (11th Cir.1986), a law professor brought a section 1983 action against the city to challenge a City Council resolution which censured the professor for improper use of public funds to represent private parties in litigation against the interests of the city. In reversing a lower court's dismissal of the action, the Eleventh Circuit held that "business reputation/goodwill is both a property and a liberty interest which is protectable under the scope of Section 1983.... [W]hen a party alleges injury to business reputation/goodwill interests in addition to injury to personal reputation, the averments satisfy the "stigma plus" requirements of *Paul* for alleging a constitutionally protected property and liberty interest." *Id.* at 969.

In *Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir.1980), the court was addressed with a situation where city police officers had conducted an illegal search and seizure of plaintiff's store. Moreover, the police had invited numerous members of the press and media along to witness the "bust." After the raid, a spokesperson for the police claimed, among other things, that all the goods in the store were stolen. The allegations made by the police turned out to be completely false. *Id.* at 502–03. The Fifth Circuit held that there was a protected interest in situations where there had been injury to reputation plus loss of goodwill. That court found that Florida law protected the plaintiffs' interest in goodwill. Moreover, the court held that even if the state law did not protect against such a loss, that the defamatory loss of goodwill was a "tangible" injury under *Paul* and would be actionable under section 1983. *Id.* at 515–16.

*The Restrictive View of "Tangible"*

The Ninth Circuit in *Havas v. Thornton*, 609 F.2d 372 (9th Cir.1979), upheld a lower court's decision to dismiss the plaintiff's section 1983 "stigma plus" action. There the plaintiff alleged that due to the government's defamation they "lost large sums of money by reason of having been greatly humiliated and held up to public scorn and derision." *Id.* at 374. The court there reasoned that *Paul v. Davis* must be read in the context of government employment cases such as *Board of Regents v. Roth*. The court grasped onto language from *Paul* to find that the "stigma plus" cases, in which the Supreme Court found in favor of a plaintiff, involved situations where a "right or status previously recognized by state law was distinctly altered or extinguished." *Havas v. Thornton*, 609 F.2d at 375. That Court provided little further analysis.

This point of view was more clearly advocated by the D.C. Circuit in *Mosrie v. Barry*, 718 F.2d 1151 (D.C.Cir.1983). As explained in the that circuit's later case of *Doe v. U.S. Dept. of Justice:*

> This circuit ... has consistently interpreted *Paul*'s "stigma plus" test to require two forms of government action before a plaintiff can "transform a [common law] defamation into a [constitutional] deprivation of liberty...." First the government must be the source of the defamatory allegations ... Second, the resulting "stigma" must involve some tangible change of status vis-a-vis the government. 753 F.2d 1092, 1108–09 (D.C.Cir.1985).

The District of Columbia Circuit found "tangible" injury to be the loss of government employment, a demotion in rank and

pay in government employment, or the loss of a right to be considered for government contracts in common with other persons. *Id.* at 1109. This analysis seems to require defamation plus an injury directly caused by the *government* as opposed to an injury caused by the acts of some third party acting upon the public official's defamatory remarks.

The Second Circuit's decision in *Baden v. Koch,* 799 F.2d 825 (2nd Cir.1986) leads this court to believe that the more restrictive view of the "stigma plus" test applies in this circuit. In that case the district court had found that the plaintiff had been slandered by City of New York officials in the course of being demoted from the post of Chief Medical Examiner of the City of New York to the position of deputy medical examiner. The demotion included a commensurate reduction in pay. *Id.* at 830. In a previous decision, the Second Circuit had determined that Mr. Baden did not have a statutory interest in the position since he was an "at will" employee. The court also noted that while plaintiff's demotion " 'might make him somewhat less attractive to some other employers' ... he can still practice his profession." *Id.* at 830–31.

The court reversed the determination of the district court and dismissed the complaint, holding that plaintiff was not, as a matter of law, deprived of any "liberty" interest protected by the due process clause. *Id.* at 831. Apparently, a potential loss of opportunity at future employment and a demotion in rank and pay were not considered to be a "tangible injury" by the Second Circuit. By its decision the court seems to have implicitly aligned itself with the more narrow view of what constitutes a tangible injury.

■ Applying the more restrictive view of the term tangible injury, this court finds that it must dismiss the plaintiff's section 1983 claim. While the facts of this case present an apparently clear cause of action under New York's common law of torts, the injury complained of beyond the defamation does not involve the loss of employment, the loss of a government contract with the Town of Watertown, or some other change of status *vis-a-vis* the governmental entity responsible for the defamatory remarks. This court holds that the complaint does not allege an injury to a liberty or property interest which is protected by Due Process Clause of the Fourteenth Amendment. Therefore, the plaintiff's section 1983 action is dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### B. The Sections 1985(3) and 1986 Causes of Action

■ "A plaintiff states a viable cause of action under section 1985 or 1986 only by alleging a deprivation of his rights on account of his membership in a particular class of individuals." *Zemsky v. City of New York,* 821 F.2d 148, 151 (2nd Cir.1987) (citations omitted). This requirement is clearly settled law in this circuit. Plaintiff makes no factual allegation in his complaint which would substantiate the section 1985(3) or 1986 claim in any manner. Therefore, this court finds that this cause of action must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). Defendants' motion for sanctions was withdrawn at oral argument.

### C. The Pendent State Claims

■ The federal questions having been dismissed, this court dismisses without prejudice the pendent state claims against defendants Dickinson and the Town of Watertown for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). It is again noted that defendant Sager is not a party to this motion and, therefore, has not been affected by the court's disposition of the present motion.

### SUMMARY

In conclusion, the motion of defendants Dickinson and the Town of Watertown to dismiss the plaintiff's federal claims is granted under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The pendent State claims against Dickinson and the Town are dismissed, due to this court's lack of subject matter jurisdiction, pursuant to Fed.R.Civ.

P. 12(b)(1). The motion by defendants for sanctions and costs is denied.

IT IS SO ORDERED.