**Kenneth LACORTE, Plaintiff,**

v.

**John HUDACS, individually, Robert F. Gollnick, individually, Thomas M. Hines, individually, Chester Rysedorph, individually, Christopher Alund, individually, Richard Corenthal, individually, Jane Lauer Barker, individually, The County of Rensselaer, John L. Buono, both individually and as Executive of Rensselaer County, Marilyn K. Douglas, both individually and as Chairperson of the Rensselaer County Legislature, The County of Albany, Michael Polovina, both individually and as an employee, agent and/or servant of Albany County, Richard Meyers, both individually and as a member of the Albany County Legislature and/or an employee, agent and/or servant of Albany County, Frank Commisso, both individually and as a member of the Albany County Legislature, Harold Joyce, both individually and as a member of the Albany County Legislature and as a business agent of the International Brotherhood of Electrical Workers, Bernard Mericle, both individually and as a business agent of the International Brotherhood of Electrical**

**Workers, The International Brotherhood of Electrical Workers, Clough Harbor and Associates, Larry V. Fairchild, both individually and as partner and/or employee, agent and/or servant of Clough Harbour and Associates, Andrew Toms, both individually and as an employee, agent and/or servant of Clough Harbour and Associates, Defendants.**

**No. 1:94–CV–402.**

United States District Court,
N.D. New York.

April 19, 1995.

---

3.  *See* Michael Tersillo, *Recent Decision*, 33 Duq. L.Rev. 345 (1995) (discussing *Fogerty v. Fantasy, Inc.*).

Richard E. Wendling, Mechanicville, NY, for plaintiff.

Maynard, O'Connor, Smith, Albany, NY (Mae A. D'Agostino, of counsel), for defendants County of Albany, Michael Polovina, Richard Meyers, Frank Commisso.

## MEMORANDUM DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

#### A. Summary of Facts:

In 1987 plaintiffs **Kenneth P. Lacorte** and **Lacorte Electrical Construction** admitted to violating New York State Labor Laws by willfully underpaying employees on public works projects. Lacorte agreed to repay the employees but was subsequently charged with compelling those employees to return

the repaid back-wages. Based on these charges plaintiffs pled guilty to grand larceny and were fined and sentenced to probation. As part of their plea agreement, however, plaintiffs received a certificate of relief from any civil forfeitures or disabilities under New York law.

Plaintiffs by their amended complaint now claim that the above captioned defendants engaged in a series of actions and conspiracies to act which intended to deprive plaintiffs of life, liberty and property without due process of law. They claim that the defendants did so by initiating unfounded investigations against plaintiffs, by distributing defamatory information to various state and municipal contracting entities concerning the above violations of New York law and by drafting legislation and executive orders, all with the purpose of having plaintiffs declared "nonresponsible" bidders and hence disqualified from being awarded public works contracts. Therefore, claim plaintiffs, the direct and proximate result was that various public entities, particularly Albany and Rennselaer Counties, denied public works contracts to plaintiffs without providing notice and an opportunity to be heard.

### B. Procedural History:

Many of the named defendants have previously moved under Fed.R.Civ.P. 12(b)(6) for dismissal of plaintiff's complaint as to them. By a decision issued from the bench on December 14, 1994, the Court granted the motions to dismiss for failure to state a claim against them of defendants Hudacs,[1] Gollnick,[2] Hines,[3] Rysedorph,[4] Alund,[5] Barbaro,[6] and Corenthal and Barker[7] (collectively the "State defendants"). The Court also granted the Rule 12(b)(6) motions of defendants Mer-

icle,[8] and Nirsberger[9] (collectively the "Union defendants"). The Court indicated at that time its intention to treat defendant IBEW's motion as one for summary judgment. Plaintiffs were granted fourteen days to respond thereto in light of the principles identified in that decision from the bench or to discontinue as against IBEW. On February 13, 1995 plaintiffs filed with the Court a Consent to Dismissal of their Complaint with prejudice against defendant IBEW.

Comes now defendants County of Albany, Michael Polovina, Richard Meyers and Frank Commisso (the "Albany County defendants") seeking dismissal of plaintiff's complaint as to them under Fed.R.Civ.P. 12(b)(6), or, in the alternative, judgment on the pleadings under Rule 12(c).

## II. DISCUSSION

### A. The Standards for a Motion to Dismiss and for Judgment on the Pleadings:

### 1. Dismissal under Rule 12(b)(6):

■ Plaintiffs have alleged a cause of action under 42 U.S.C. § 1983, which requires that the plaintiffs make two allegations: (1) that some person has violated the plaintiffs' protected rights under the U.S. Constitution or federal law; and, (2) that the person who allegedly violated such rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). When examining a suit brought under § 1983 it is the duty of the court to examine whether plaintiffs have alleged sufficient facts which, if proved, would comprise an actionable deprivation of a fed-

1. Formerly Commissioner of the New York State Office of General Services and now Commissioner of New York State Department of Labor.

2. Deputy Commissioner of the Department of Labor.

3. Executive Deputy Commissioner of Labor.

4. Assistant Director of the Department of Labor.

5. New York State Superintendent of Public Works Investigators.

6. New York State Assemblyman and Chairman of the Assembly Labor Committee.

7. New York State Assistant Attorney Generals.

8. Business Manager of IBEW local No. 166 of Schenectady, New York.

9. President of IBEW local No. 438 of Troy, New York.

eral right. *Robinson v. Mount Vernon,* 654 F.Supp. 170, 172 (S.D.N.Y.1987). The court should not dismiss on a Rule 12(b)(6) motion unless it appears clear that the plaintiffs cannot in any way establish a set of facts to sustain their claim which would permit relief. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986).

In determining the legal sufficiency of a claim, the facts must be judged in the light most favorable to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The federal courts are prohibited from applying a "heightened pleadings standard" to certain § 1983 cases, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) but nonetheless, complaints based on civil rights statutes must include specific allegations of facts showing a violation of rights "instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

### 2. Judgment on the Pleadings:

Under Rule 12(c) the Court may consider only the allegations in the pleadings and a complaint should not be dismissed unless it appears beyond doubt that the claimant can prove no set of facts in support of the claim. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 553 (2d Cir.1977); *State of N.Y. v. SCA Services,* 754 F.Supp. 995, 999 (S.D.N.Y.1991). The motion for judgment on the pleadings has utility only when all material allegations of fact are admitted in the pleadings and only questions of law remain. *Id.; see also* 5A Wright & Miller, *Federal Practice and Procedure* § 1367 at 510 (2d Ed.1990). It is in light of these considerations that plaintiffs' complaint is examined.

### B. The Sufficiency of Plaintiff's § 1983 Claims as Against These Defendants:

Read in a light most favorable to them, plaintiffs complaint makes out only two color-able federal rights which plaintiffs can claim these defendants impinged while acting under color of state law, both flowing from the Due Process clause of the Fourteenth Amendment. The first is an alleged violation of plaintiffs' liberty interest as low bidders on various public works contracts, the denial of which must be accompanied by notice and an opportunity to respond. *LaCorte Electrical Constr. & Maintenance, Inc. v. County of Rensselaer,* 80 N.Y.2d 232, 235, 590 N.Y.S.2d 26, 28, 604 N.E.2d 88, 90 (1992). The second federal right violation stems from defendants' alleged defamations of plaintiffs uttered in the course of these defendants' efforts to prevent plaintiffs from being awarded various public works contracts. Plaintiffs' apparently believe that their allegations satisfy the "stigma-plus" test for such constitutionalized defamation claims and that therefore, these defendants impinged on their protected liberty interest in reputation. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). *Dower v. Dickinson,* 700 F.Supp. 640, 647 (N.D.N.Y.1988). Plaintiffs also seek to charge each defendant with the acts of all other defendants by alleging the existence of a massive conspiracy by all defendants to deprive plaintiffs of their rights to due process.

The dismissal of plaintiffs' complaint against the earlier-moving State and Union defendants was compelled by three findings derived from plaintiff's allegations alone: 1). that because none of those defendants had a duty to provide plaintiff with due process, none of their *individual* actions could be conceived of as having denied plaintiffs any process due to them. *See Martinez v. California,* 444 U.S. 277, 284–85, 100 S.Ct. 553, 558–59, 62 L.Ed.2d 481 (1980); *Sommer v. Dixon,* 709 F.2d 173, 174 (2d Cir.) *cert. den'd* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983); 2). that because none of the purportedly defamatory material allegedly disseminated by those defendants was published in the course of *their* impairment of a right or status of plaintiffs' previously recognized by law, plaintiffs' claims as to those defendants failed to implicate a protected liberty interest in reputation. *See Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991);

and 3). that since plaintiffs' conspiracy allegations against those defendants were insufficient, *See, Sommer,* 709 F.2d at 173; *Dixon v. City of Lawton,* 898 F.2d 1443, 1449 (10th Cir.1990), plaintiffs were unable to impute to those defendants the actions of any other defendants who may have deprived plaintiff of due process or violated plaintiffs' liberty interest in reputation. It followed from those three findings that none of the allegations against those defendants could establish that they had infringed a federal right and so plaintiffs' claims under 42 U.S.C. § 1983 were dismissed as insufficient as a matter of law.

The instant defendants are differently situated, however, and so the Court must reexamine plaintiffs' allegations as pleaded against the Albany County defendants. Specifically, the allegations against these defendants primarily concern their actions taken in denying to plaintiffs a public works contract proposed on or before November, 1991 by defendant County of Albany, involving the installation of a security system at the Albany County Airport. Defendants Polovina, Meyers, and Commisso are alleged to have acted as agents, employees and servants of defendant County of Albany and are sued in their personal and official capacities: Polovina is alleged to have acted as the director of the Albany County airport; Meyers is alleged to have acted as a member of the Albany County legislature and as counsel to the Albany County ·airport and/or Mass Transit Committee of said legislature; Commisso is alleged to have acted as a member of the Albany County legislature and chairperson of the Mass Transit Committee of said legislature.

**1. The Low–Bidder Due Process Allegations:**

**a. The Defendants Individually:**

■ The Court first finds that plaintiffs have sufficiently alleged a cause of action under § 1983 for violation of plaintiffs' due

process right to meaningful notice and an opportunity to be heard, as low bidders on the Albany airport public works contract, before their low bid was denied in favor of a higher bidding contractor. Without outlining further the torturous procedural history of the airport contract,[10] the Court finds that plaintiff's factual allegations, if proven, could establish that the County of Albany generally, and these defendants in particular, denied them an opportunity to be heard before denying them the contract in favor of the second lowest bidder. Furthermore, plaintiffs' allegations show that when defendants were precluded from awarding the contract to the second lowest bidder by order of the New York State Courts, these defendants wrongfully attempted to re-open the bidding process to once again foil plaintiffs' low bid.

The Court takes pause as to the allegations of due process denial against defendant Polovina individually, since it is unclear from this limited record exactly what role, if any, Polovina actually played in the airport contracting process. It may well be established through affidavits submitted upon motion for summary judgment that Polovina is not fairly chargeable with a denial of due process in that he owed plaintiffs no process and was not situated to deny same to plaintiffs: on a motion under Rule 12(b)(6), however, it suffices to say that defendant Polovina has not established that plaintiff cannot in any way establish a set of facts to sustain their claim which would permit relief. *See Hughes,* 449 U.S. at 10, 101 S.Ct. at 176.

**b. The Defendants' Conspiratorially:**

■ The Court earlier dismissed the conspiracy allegations as to the State and Union defendants because they contained only vague, general and conclusory allegations. *Sommer,* 709 F.2d at 173; *see also Martin v. Supreme Court of New York,* 644 F.Supp. 1537 (N.D.N.Y.1986). While to some extent the conspiracy allegations against these Albany defendants suffer from the same defects,

**10.** Plaintiffs allege that two separate and favorable Article 78 decisions by New York State Supreme Courts, as well as a determination on administrative appeal to the Federal Aviation Administration, sought to compel Albany County to reverse their determinations and award the airport contract to plaintiffs. It is further alleged that plaintiffs have to this date not been awarded to contract.

it is also true as plaintiffs point out that factual allegations of overt acts which give rise to a reasonable inference of conspiracy may suffice to plead conspiracy, *see Long Island Lighting Co. v. Cuomo,* 666 F.Supp. 370, 425 (N.D.N.Y.1987). Unlike the unsupported allegations against the earlier dismissed defendants, the factual allegations as to Polovina, Meyers and Commisso, might, if true, show that these defendants acted in concert to achieve an unlawful objective during the period from November, 1991 and continuing to the present. Furthermore, under certain circumstances the allegations could give rise to the conclusion that these defendants agreed to inflict a wrong or injury on plaintiffs' and committed certain overt acts in furtherance of that agreement. As such the Court will not dismiss the conspiracy allegations as to the Albany defendants at this time.

The Court also stresses that a showing that the Albany defendants conspired to simply interfere with plaintiffs' contracting will not give rise to § 1983 liability. Rather, plaintiffs must ultimately establish that these defendants conspired to cause a due process deprivation. *See Slotnick v. Staviskey,* 560 F.2d 31 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Schneider v. Colegio de Abogados de Puerto Rico,* 546 F.Supp. 1251, 1263 (D.P.R.1982). Ultimately then, plaintiffs must show that these defendants conspired to deny plaintiffs the airport contract *without notice and an opportunity to be heard.* From plaintiffs' allegations alone it seems far more likely that these defendants simply undertook to interfere with plaintiffs' receipt of the contract and were indifferent to whether plaintiff was denied with or without due process. Nevertheless, the Court cannot say either that plaintiffs' conspiracy allegations are insufficient to give these defendants fair notice of the basis for the relief sought, or, that plaintiff can establish no set of facts which would entitle them to relief. As such, defendants motion to dismiss the conspiracy allegations as to them is DENIED.

## 2. The Liberty Interest in Reputation and Defamation Allegations:

█ Defendants claim that the defamation allegations against them are insufficiently pleaded and must be dismissed. The Court first notes that it does not read plaintiffs' complaint as stating a common-law defamation claim at all. Rather, it appears plaintiffs proceed only under § 1983 and state a defamation claim only for invasion of their Due Process liberty interest in reputation. *See Paul,* 424 U.S. at 693, 96 S.Ct. at 1155; *Dower,* 700 F.Supp. at 647. Defendants argue only that plaintiffs' have insufficiently alleged *any* claim of defamation; their papers do not address application of the intricate doctrines which control the intersection of Due Process, defamation and § 1983. *See Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

Responding to defendants' arguments then, the Court finds that plaintiffs' claims that the Albany defendants supplied false, defamatory and misleading information to the Albany County legislature (Cmplt. ¶¶ 185–187) are sufficiently pleaded to withstand a motion under Rule 12(b)(6): plaintiffs are at least entitled to further discovery on these claims. The cases upon which defendants rely in support of dismissal turn on conclusory allegations of defamation which fall far short of that which plaintiffs here have pleaded, *See i.e. Schibursky v. IBM Corp.,* 820 F.Supp. 1169 (D.Minn.1993) (failure to allege who uttered defamatory remarks to who and in what context), or are readily distinguishable, *see Martinez v. Winner,* 548 F.Supp. 278 (D.Colo.1982) (no Due Process component accompanying claim of constitutional defamation); *McKnight v. Southeastern Pennsylvania Transp. Authority,* 438 F.Supp. 813 (1977) (failure to allege intentional defamation under § 1983).

While plaintiffs here have not alleged the precise language of the defamatory materials allegedly published, they have sufficiently alleged the general nature of the defamatory material (Cmplt. ¶ 187), that these materials were allegedly forwarded by these defendants to the Albany legislature, and that they were allegedly distributed within the context and time frame of the Albany contract-letting process complained of, and more specifically "on or about December of 1991" at the beginning of that process (Cmplt. ¶ 185). Indeed one of the cases pointed to by the defendants holds that "fail[ure] to recite the exact lan-

guage spoken is not fatal to ... [a] defamation claim." *Schibursky*, 820 F.Supp. at 1181.

Finally the Court takes note of the specific allegation that on June 10, 1992 defendant Commisso expressly referred to plaintiff Kenneth P. LaCorte as a "thug." While it may be true that characterization as a "thug" may not support a claim of defamation, notwithstanding defendants' arguments to the contrary *Schibursky* does not establish that proposition. Nor have the defendants established to the Court's satisfaction that under no circumstances could Commisso's remark be considered defamatory. It follows then that defendants' motion to dismiss plaintiffs' claims alleging invasion of his Due Process liberty interest in reputation is DENIED.

## C. Legislative Immunity:

■ Defendants Meyer and Commisso claim that they are entitled to absolute legislative immunity to plaintiffs' charges. *See Tenney v. Brandhove*, 341 U.S. 367, 372, 71 S.Ct. 783, 786, 95 L.Ed. 1019 (1951); *Goldberg v. Rocky Hill*, 973 F.2d 70, 72–73 (2d Cir.1992). Defendants urge this Court to analyze the conduct of Meyers and Commisso under a functional approach, focusing on the nature of the alleged conduct undertaken by these legislative defendants, and to conclude that the acts complained of were undertaken by these defendants in their legislative capacities. *See Rateree v. Rockett*, 852 F.2d 946 (7th Cir.1988).

Defendants then point to a line of cases, including *Rateree*, which essentially hold that budgetary or policy determinations by legislators which result in the termination of individual government employees are not thereby transformed from legislative functions into administrative functions which would no longer be shielded by absolute immunity. *See Drayton v. Rockville*, 699 F.Supp. 1155 (D.Md.1988); *Orange v. County of Suffolk*, 830 F.Supp. 701 (E.D.N.Y.1993). It follows also that these policy and budgetary decisions which negatively impact individual employee-plaintiffs are not divested of absolute immunity by plaintiffs' allegations that they were undertaken because of personal animus or malicious motive. *See Ellis v. Coffee County Board of Registrars*, 981 F.2d 1185 (11th Cir.1993). In short, defendants argue

that their conduct in denying plaintiffs the airport contract is analogous to undertaking legislative action which results in the termination of employment.

Plaintiffs likewise argue that the scope of legislative immunity in the individual case must be determined by the particular function undertaken by the legislative defendants. They argue, however, a line of cases which hold that legislative immunity is unavailable where the complained of action affects only specified individuals and does not turn on broad general policy statements or generally applicable rules of conduct. *See Cutting v. Muzzey*, 724 F.2d 259, 261–62 (1st Cir.1984); *Haskell v. Washington Township*, 864 F.2d 1266, 1277–78 (6th Cir.1988); *see also, Moore v. Trippe*, 743 F.Supp. 201, 207 (S.D.N.Y.1990) ("Courts have recognized that local legislative immunity may be lost if the actions taken impact on particular individuals, rather than on a community generally, or if the factors considered in adopting the legislation relate to specific individuals, instead of general policy implications.") (citations omitted). Plaintiffs' analogize from these zoning cases that where, as plaintiff has alleged here, legislators undertake activity in a narrow field which affects only specified individuals, they are actually acting administratively and should not partake of legislative immunity.

Plaintiffs' rely most heavily on *Three Rivers Cablevision, Inc. v. Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980). The *Three Rivers* Court squarely addressed the question, posed by a disappointed bidder, of the immunity of legislative defendants who have passed by vote a resolution authorizing award of a competitively bid contract to an allegedly improperly selected contractor. *Id.* at 1121. That Court held that the critical city council resolution was administrative in nature in that it turned on application of existing legislation to a specific situation. *Id.* at 1135–36. As such, legislative immunity was denied to that otherwise concededly legislative body's conduct in determining who should be awarded a public works contract.

Proper application of the doctrine of legislative immunity to the facts alleged poses an exceedingly close and difficult question. The Court has determined, however, that legislative immunity should not be available as to

the actions undertaken by Meyer and Commisso in authorizing the award of the Albany airport contract. Of course plaintiffs' allegations of bad motive and wrongful conduct play no part in that determination.

Rather, the Court first finds that defendants' analogy to the budget-employment cases fails at its first premise. Here questions of budgeting of resources and policy play no role in the determination mandated by New York State General Municipal Law § 103: which among specified individual contractors is the lowest responsible bidder?

Furthermore, the Court finds that the facts of *Three Rivers Cablevision* are on all fours with plaintiffs' allegations and agrees with the analysis and conclusions of that Court. While the initial decisions to undertake the airport project and to adopt certain contract specifications may properly be characterized as flowing from legislative decision-making and actions, adoption of the resolution denying the contract to these alleged low-bidders is more properly characterized as an administrative act. That resolution merely applied to a specific instance the broad policies promulgated by those earlier legislative inquiries. *See Three Rivers Cablevision,* 502 F.Supp. at 1136.

The Court also notes that the New York State General Municipal Law which defendants acted pursuant to strictly circumscribes their discretion in awarding contracts. *See* N.Y.Gen.Mun.Law § 103 (McKinneys 1986 & 1995 Supp.). Furthermore, plaintiffs have also alleged that certain of Meyers and Commisso's complained of actions were undertaken after whatever contracting discretion they possessed within § 103 was further circumscribed by two separate orders of the New York State Supreme Courts after plaintiffs sought Article 78 review. (Cmplt. ¶¶ 201–02, 235–37); *see also* n. 10 *infra.* Such limitations on the scope of the legislative action under consideration have been found properly cognizable by Courts undertaking the legislative immunity inquiry. *See Front Royal & Warren County Industrial Park Corp. v. Town of Front Royal,* 865 F.2d 77, 79 (4th Cir.1989).

Finally, the Court notes that adherence to and application of the inquiries and general standards outlined in § 103 are mandated to be undertaken by "the appropriate officer, board or agency of [the] political subdivision" awarding the relevant contract. *See* N.Y.Gen.Mun.Law § 103(1–a) (McKinneys 1986 & 1995 Supp.). While by no means dispositive in categorizing the "function" allegedly performed by these defendants, this Court has difficulty in characterizing inquiries and determinations which are statutorily assigned to either an executive, a legislative or an administrative decision-maker, as action undertaken solely in a legislative capacity.

For all the foregoing reasons the Court finds that the defense of legislative immunity to plaintiffs' allegations is unavailable to defendants Meyer and Commisso.

### III. Conclusion:

The motion to dismiss for failure to state a claim upon which relief can be granted of the Albany defendants is DENIED.

The motion for judgment on the pleadings based on legislative immunity of Meyer and Commisso is, likewise, DENIED.

**IT IS SO ORDERED.**